The Honorable James L. Robart

1
2
3
4
5
6
7   UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
8   AT SEATTLE

9   IRON PASHA INC.,                                    )   IN ADMIRALTY
                                                        )
10                       Plaintiff,                     )   No. C12 – 0621 JLR
                                                        )
11          v.                                          )
                                                        )
12  SHANGHAI GRAND CHINA SHIPPING                       )
    DEVELOPMENT CO., LTD; HONG KONG                     )   DEFENDANTS'
13  CHAIN GLORY SHIPPING CO., LTD;                      )   MOTION TO DISMISS
    GRAND CHINA LOGISTICS HOLDING                       )   COMPLAINT AND VACATE
14  (GROUP) COMPANY LIMITED; and HNA                    )   PROCESS OF MARITIME
    GROUP CO., LTD.,                                    )   ATTACHMENT AND
15                                                      )   GARNISHMENT
                         Defendants.                    )
16                                                      )   *Note on Motion Calendar:*
                                                        )   Friday, July 26, 2013
17                                                      )
    _____                )   *ORAL ARGUMENT REQUESTED*
18
19
20
21
22
23
24
25
26
27

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION AND RELIEF REQUESTED ................................................................. 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A.   Iron Pasha's Original Claim. ............................................................................ 2

    B.   Iron Pasha's New Claim. .................................................................................. 3

    C.   Defendants Have No Attachable Property In The Hands of The Garnishee. ................... 4

III. EVIDENCE RELIED UPON ........................................................................................ 4

IV. ARGUMENT AND AUTHORITY ................................................................................ 5

    A.   The Attachment Should Be Vacated Because At The Time The Claim Arose The Defendants Were All Found In The District. ............................................................ 6

    B.   The Court Should Dismiss The Claims Against HNA Because It Is Not A Party To The Maritime Contract And Because Plaintiff Fails to Allege Facts That Establish Alter Ego Liability. .......................................................................................... 8

        1.   Plaintiff's Alter Ego Claims Fail Under English Law. ........................................ 11

            a.   English Law Governs The Alter Ego Analysis. ............................................. 11

            b.   Plaintiff Has Failed To Allege A Prima Facie Alter Ego Claim Under English Law. ............................................................................................. 13

        2.   Plaintiff's Alter Ego Claims Fail Under Chinese Law. ....................................... 17

        3.   Plaintiff's Alter Ego Claims Fail Under U.S Law. ........................................... 17

    C.   Even If Plaintiff Could Prove HNA Has Alter Ego Liability And Is Properly A Defendant In This Case, HNA Has No Property In The Jurisdiction. ............................ 20

        1.   Under Chinese Law, Hainan Stock Is Located In China. ..................................... 20

        2.   Under U.S. Law, Hainan Stock Is Located In China. ......................................... 22

    D.   The Court Should Dismiss The Claims Against Shanghai Development, Chain Glory, And GCL Because None Of Those Defendants Have Assets In The Jurisdiction, Nor Does The Complaint Allege They Do. .............................................. 24

V. CONCLUSION ........................................................................................................ 24

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — i

DWT 22167621v3 0095196-000002

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al Fatah Int'l Nav. Co. v. Shivsu Canadian Clear Waters Tech. (P) Ltd.*,
   649 F. Supp. 2d 295 (S.D.N.Y. 2009) ...................................................................11

*American Renaissance Line, Inc.* v. *Saxis Steamship Co.*,
   502 F.2d 674, 677 (2nd Cir. 1974) .....................................................................18

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India
   Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009) ...................................5

*Aqua-Marine Constructors, Inc. v. Banks*,
   110 F.3d 663 (9th Cir. 1997) ..............................................................................21

*Arctic Ocean Int'l, Ltd v. High Seas Shipping Ltd.*,
   622 F. Supp. 2d 46 (S.D.N.Y. 2009) ...............................................................9, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................9

*Blau v. Lamb*,
   191 F. Supp. 906 (S.D.N.Y. 1961) ....................................................................7, 8

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*,
   No. 12 Civ. 2213, *5 (S.D.N.Y. Jan. 11, 2013) (Bugaighis Decl. Ex. B) .............11, 13, 14, 15

*Blue Whale Corp. v. Grand China Shipping Development Co., Ltd., et al.*,
   No. 13-0192 (2d Cir. 2013) ................................................................................11

*Bottiglieri Di Navigazione SPA v. Tradeline LLC*,
   472 F. Supp. 2d 588 (S.D.N.Y. 2007) ................................................................11

*Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.*,
   606 F. Supp. 2d 391 (S.D.N.Y. 2009) ..................................................................9

*Chan v. Soc'y Expeditions, Inc.*,
   123 F.3d 1287 (9th Cir. 1997) ............................................................................17

*David v. Glemby Co.*,
   717 F. Supp. 162 (S.D.N.Y. 1989) .....................................................................18

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003)................................................................19

*Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*,
    486 F. Supp. 2d 261 (S.D.N.Y. 2007) ...............................................10, 18

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ...........................................................................21

*Emeraldian*, 2009 U.S. Dist. LEXIS 89355, *7 (S.D.N.Y. Sept. 28, 2009) ...............9, 17, 18, 20

*Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*,
    591 F.3d 1208 (9th Cir. 2010).....................................................5, 6, 8, 21

*FR 8 Singapore PTE, Ltd* v. *Albacore Maritime, Inc.*,
    794 F. Supp. 2d 449 (S.D.N.Y. 2011) .........................................12, 13, 14, 15

*Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*,
    774 F. Supp. 840 (S.D.N.Y. 1991) ...............................................................18

*In re Tyson*,
    433 B.R. 68 (S.D.N.Y. 2010) ....................................................................15, 16

*Indagro*, 652 F. Supp. 2d at 492 ...........................................................9, 11

*Jellenik v. Huron Copper Mining Co.*,
    177 U.S. 1 (1900) ...................................................................................22

*Kashfi v. Philbro Salomon, Inc.*,
    628 F. Supp. 727 (S.D.N.Y. 1986) ...........................................................18

*Kilkenny v. Arco Marine Inc.*,
    800 F.2d 853 (9th Cir. 1986)....................................................................17

*Kitzer v. Phalen Park State Bank*,
    379 F.2d 650 (8th Cir. 1967).....................................................................22

*Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*,
    2009 U.S. Dist. LEXIS 14392 (S.D.N.Y. Feb. 24, 2009) .................................9, 20

*MAG Portfolio Consult, GmbH v. Merlin Biomed Grp., LLC*,
    268 F.3d 58 (2d Cir. 2001) .........................................................18, 19

*Marine Midland Bank, N.A. v. Jawad & Haidar Y. Abulhasan Co.*,
    U.S. Dist. LEXIS 15250 (D. Or. Nov. 2, 1987) ..............................................22

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — iii

DWT 22167621v3 0095196-000002

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir. 2004) ................................................................. 12

*OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*,
    2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 26, 2007) ..................... 11

*OS Shipping Co. v. Global Maritime Trust*,
    2011 WL 1750449 (D. Or. May 6, 2011) ............................................... 9

*Padre Shipping, Inc. v. Yong He Shipping*,
    553 F. Supp. 2d 328 (S.D.N.Y. 2008) .................................................. 11

*Seawind Campania, SA. v. Crescent Line, Inc.*,
    320 F.2d 580 (2d Cir. 1963) .................................................................. 8

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*,
    619 F.3d 207 (2d Cir. 2010) .................................................................. 5

*Sonito Shipping Co. v. Sun United Maritime Ltd.*,
    478 F. Supp. 2d 532 (S.D.N.Y. 2007) .................................................. 11

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
    560 F.3d 127 (2d Cir. 2009) .................................................................. 8

*Sylvania Indus. Corp. v. Lilienfeld's Estate*,
    132 F.2d 887 (4th Cir. 1943) ............................................................... 22

*U. S. Indus., Inc. v. Gregg*,
    540 F.2d 142 (3d Cir. 1976) ................................................................ 22

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*,
    475 F. Supp. 2d 275 (S.D.N.Y. 2006) ......................................... 9, 12, 13

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
    668 F.2d 1014 (9th Cir. 1981) ............................................................... 7

*Williams v. McAllister Bros., Inc.*,
    534 F.2d 19 (2d Cir. 1976) .................................................................. 18

*Williamson v. Recovery Ltd. P'ship*,
    542 F.3d 43 (2d Cir. 2008) .................................................................... 9

*Wirt Franklin Petroleum Corp. v. Gruen*,
    139 F.2d 659 (5th Cir. 1944) ("capital stock of a corporation has a situs for purposes
    of attachment, garnishment, and execution in the state of its corporate domicile
    only") .................................................................................................. 22

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — iv

DWT 22167621v3 0095196-000002

**OTHER STATUTES**

Uniform Commercial Code ........................................................................................................22

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................. 10

Fed. R. Civ. P. Rule 8's .............................................................................................................9

Rule 15(d) ..................................................................................................................................7

Rule B(1)(a) and (b) ..................................................................................................................6

Rule B(1)(d)(ii) ........................................................................................................................23

Rule E(2) ...............................................................................................................................9, 10

Rule E(4)(f) ........................................................................................................................5, 9, 21

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws § 302 ..................................................................21

Restatement (Second) of Conflicts of Laws §§ 188, 6 cmt. c. ...............................................21

Zana Bugaighis, <u>Ex. A</u>..............................................................................................................3

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — v

DWT 22167621v3 0095196-000002

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.  INTRODUCTION AND RELIEF REQUESTED

Defendants Shanghai Grand China Shipping Development Co. Ltd, Hong Kong Chain Glory Shipping Co. LTD, Grand China Logistics Holdings (Group) Company Limited, and HNA Group Co. Ltd. request that this Court *vacate* any orders authorizing any process of maritime attachment and garnishment and ***dismiss*** this Rule B action for the following reasons:

***First***, at the time the maritime claim upon which Iron Pasha now seeks the attachment arose and was filed, all defendants were registered to do business in Washington and therefore were "found in the district," thus precluding a Rule B action.

***Second***, even if the defendants were not found in the district for purposes of this attachment, HNA is not a party to the maritime contract and plaintiff fails to allege facts sufficient to establish alter ego liability on the part of HNA.  Absent alter ego liability, the Court has no maritime jurisdiction over HNA, and the Court should therefore vacate any process purporting to attach HNA property.

***Third***, even if HNA did have alter ego liability and could be deemed to be a proper defendant in this Rule B maritime action, the Complaint fails to allege sufficient facts demonstrating that HNA has any attachable property in this district.  Although HNA (a Chinese company) owns stock in Hainan Airlines (another Chinese company), under either Chinese law or U.S. law, that stock is located in China, not in Washington.  Absent attachable property in the district, the Rule B action fails.

***Fourth***, even if the Complaint could be said to allege sufficient facts regarding the property of HNA, it fails to allege ***any*** basis for Rule B jurisdiction over the other three defendants.  None of these other defendants have attachable property in the district nor does the Complaint allege facts showing they do.  At a minimum, the Court should dismiss defendants Shanghai Grand China Shipping Development, Hong Kong Chain Glory, and Grand China Logistics from the action.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

## II.  STATEMENT OF FACTS

### A.  Iron Pasha's Original Claim.

Plaintiff Iron Pasha is a Marshall Islands corporation and the registered owner of the MV GCL ARGENTINA, a motor bulk carrier vessel registered in the republic of the Marshall Islands (the "Vessel").  First Supplemental Verified Complaint (Dkt. #40-1) ("Supp. Compl."), ¶ 3.

Defendant Shanghai Grand China Shipping Development Co. Ltd ("Shanghai Development") is a foreign corporation organized under the laws of the People's Republic of China and is the charterer of the Vessel.  Supp. Compl. ¶ 4.  Defendant Hong Kong Chain Glory Shipping Co. LTD ("Chain Glory") is a "corporate entity company organized under the laws of a country other than the United States" and a "nominee charterer" of the Vessel.  *Id.* ¶ 5.  Defendant Grand China Logistics Holdings (Group) Company Limited ("GCL") is corporation organized under the laws of the People's Republic of China and is guarantor of obligations of Shanghai Development and Chain Glory under the Charter.  *Id.* ¶ 6.  Iron Pasha alleges that these three Defendants have defaulted on their obligations under the charter contract.  *Id.* ¶ 14.  Pursuant to the charter contract and guaranty, these claims are subject to arbitration in London and governed by English law.  *Id.* ¶ 15, Exs. 1 ¶ 30.

Defendant HNA Group is a foreign corporation organized under the laws of the People's Republic of China and is the parent company of Shanghai Development, Chain Glory and GCL.  *Id.* ¶ 6.  Iron Pasha does not allege that HNA is a party to the charter contract, nor that it guaranteed any obligations under that charter contract.

Iron Pasha filed its original Verified Complaint in this action on April 12, 2012, asserting a claim for breach of the bareboat charter party contract for the period March 21, 2012 through April 20, 2012, at a rate of $19,800 per day for period of 30 days, totaling $594,000, plus recovery of interest and legal fees associated with that claim.  *See* Verified Complaint (Dkt. #1) ¶¶ 12, 49.  Iron Pasha commenced this Rule B action as an "ancillary proceeding" to obtain security over Plaintiff's claims in aid of the London arbitration.  *Id.* ¶ 16.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

Although not denominated as such in the Verified Complaint, the original claim covered the 36th and 37th hires of the Vessel.  On April 24, 2012, Iron Pasha filed its First Amended Verified Complaint to expand its claim to include the 38th hire as well, from March 21, 2012 through May 5, 2012, at the rate of $19,800 now for a period of 45 days, totaling $891,000, and again seeking recovery of interest and legal fees associated with that claim.  *See* First Amended Verified Complaint (" Am. V. Compl.") (Dkt. # 15) ¶¶ 12, 49.

In sum, the claim asserted in the First Amended Verified Complaint covered the 36th, 37th and 38th hires of the Vessel.  The amounts due for those hires were paid on May 8, May 16, and June 3, 2012, respectively.  *See* Declaration of Josh Shen Xin ¶¶ 2-3, Ex. A.  Given the payment of the 36th-38th hires, there was no further activity in the lawsuit until March 2013.

In the meantime, defendant HNA registered to do business in Washington on May 10, 2012; defendant GCL registered to do business in Washington on May 11, 2012; defendant Shanghai Development registered to do business in Washington on September 21, 2012; and defendant Chain Glory likewise registered to do business in Washington on September 21, 2012.  *See* Declaration of Zana Bugaighis, Ex. A.

**B.      Iron Pasha's New Claim.**

On March 7, 2013, Iron Pasha purported to revive the Rule B action by filing its Motion for Directions with respect to an entirely new and different claim involving independent operative facts.  This new claim involves an alleged breach for the period November 1, 2012 to March 1, 2013 (the 54th through 63rd hires of the Vessel), a period of 120 days at $19,800 per day, totaling $2,376,000, plus recovery for interest and legal fees on this new claim.  *See* Supp. Compl. ¶¶ 12, 49; *see also* Josh Shen Xin Decl. ¶ 4.

In filing its First Supplement Verified Complaint, Iron Pasha did not *amend* its original claim but rather used the same caption to assert an entirely new and different claim (at the same time dropping its original claim) for which it is now seeking a new Rule B attachment.  But this new claim, which concerns an alleged breach of charter hires occurring over the period

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

November 1, 2012 through May 1, 2013, arose and was filed only *after* all four defendants had registered in Washington—in May 2012 and September 2012, respectively—by which time all defendants were "found in the district."

On June 4, 2004, pursuant to the Order Granting Plaintiff's Motion for Directions, and based on the new claim asserted in Iron Pasha's Supplemental Complaint, Iron Pasha purported to serve a Second Amended Process and Maritime Attachment and Garnishment on Hainan Airlines, seeking to attach all "tangible and intangible property" of defendants "as may be in the hands or control of the specific garnishee, to wit:  Hainan Airlines Company Limited, or any other garnishee within this district."  Dkt. # 39-8, Dkt. #42.

### C.     Defendants Have No Attachable Property In The Hands of The Garnishee.

Nowhere does the Supplemental Complaint allege any facts to suggest that defendants Shanghai Development, Chain Glory, or GCL have property in this district, or in the hands of a garnishee in this district, or otherwise have any connection with Hainan Airlines (the garnishee defendant) to establish Rule B jurisdiction over them.

Regarding HNA, Iron Pasha alleges that it has property in this district in the hands of garnishee defendant Hainan Airlines because "HNA holds a direct shareholding stock interest in the said [garnishee] of approximately 7.2% and an indirect shareholding in same, through [an] intermediate holding company (Grand China Air Co. Ltd.) of which it controls approximately 23.11%."  Supp. Complaint ¶ 41.  As explained below, that stock is located in China – not in this district.

### III.  EVIDENCE RELIED UPON

Defendants rely upon the pleadings and files in this case and the declarations of Xingzheng Hou, Josh Shen Xin, and Zana Bugaighis submitted with this motion.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

## IV.  ARGUMENT AND AUTHORITY

Rule B maritime attachments serve the dual purpose of obtaining jurisdiction over an *absent* defendant and securing collateral for a potential judgment in plaintiff's favor.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009).

For the Court to issue an order of maritime attachment, the plaintiff must satisfy Supplemental Rules B and E's filing and service requirements and show that (1) plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property can be found within the district; and (4) there is no statutory or maritime bar to the attachment.  *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhard*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing *Aqua Stoli*, 460 F.3d at 445).

Where, as here, property has been restrained in a maritime attachment order, Supplemental Rule E(4)(f) provides that the defendants "shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should ***not*** be vacated or other relief granted consistent with these rules."  Fed. R. Civ. P. Supp. R. E(4)(f) (emphasis added).  At a Rule E(4)(f) hearing, a defendant may attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings."  *Equatorial Marine*, 591 F.23d at 1210; Fed. R. Civ. P. Supp. R. E(4)(f).  To that end, "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E."  *Aqua Stoli*, 460 F.3d at 445 n.5.

"[I]f, at any point, a plaintiff in a maritime attachment case ceases to be able to satisfy the requirements of Rule B, a district may—and indeed *should*—revisit and vacate any orders of attachment."  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 212 (2d Cir. 2010).  Here, the attachment purporting to attach Hainan stock owned by HNA fails to satisfy three of the four grounds necessary to maintain a Rule B action: (1) at the time the claim arose, the defendants were in fact found in the district; (2) there is no valid maritime claim

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

against HNA (which was never a party to the underlying maritime contract) and Iron Pasha

fails to plead facts sufficient to establish that HNA has alter ego liability for the obligations of

the other defendants; and (3) in any event, the defendants have no attachable property in the

district.  For each of these independent reasons, the Court should vacate the attachment and

dismiss this Rule B action.

> **A.     The Attachment Should Be Vacated Because At The Time The Claim Arose
> The Defendants Were All Found In The District.**

A Rule B action may be maintained only if "a defendant is not found in the district."

*See* Rule B(1)(a) and (b); *see also Equatorial Marine*, 591 F.3d at 1210 (citing *Aqua Stoli*, 460

F.3d at 445).

Here, HNA and GCL registered to do business in Washington in May 2012 and

Shanghai Development and Chain Glory registered in Washington in September 2012.  As of

those dates, all of these defendants were thus "found in the district."  While the claim raised in

Plaintiff's original Verified Complaint (Dkt. #1) (filed on April 12, 2012) and its First

Amended Verified Complaint (Dkt. #15) (filed on April 24, 2012) preceded those registrations,

the claim asserted in the Supplemental Complaint upon which it now bases its new attachment

***arose only after*** defendants were registered to do business in Washington.  Specifically, the

First Amended Verified Complaint brought a claim and sought a Rule B attachment for breach

of the 36th, 37th, and 38th charter hires, from March 21, 2012 through May 5, 2012, at the rate

of $19,800 for a period of 45 days, totaling $891,000, and seeking recovery of interest and legal

fees associated with that claim.  *See* Am. V. Compl ¶¶ 12, 49.  But the amounts due for those

hires were paid on May 8, May 16, and June 3, 2012, respectively.  *See* Declaration of Josh

Shen Xin, ¶¶ 2-3, Ex. A.

Iron Pasha's Supplemental Complaint, for which it now seeks a new process of

attachment, asserts an entirely ***new*** and ***different*** claim involving events distinct from those

involved in the original action.  This new claim involves an alleged breach for the period

November 1, 2012 to March 1, 2013 (the 54th through 63rd hires of the vessel), a period of 120

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

days at $19,800 per day, totaling $2,376,000.  *See* Supp. Compl. ¶¶ 12, 49.  It is precisely

because the 36th, 37th, and 38th hires had been paid back in May/June 2012 that Iron Pasha's

Supplement Complaint does not allege that those previous hires remain unpaid nor does it seek

an attachment based on those previous hires.

The Court's Order Granting Plaintiff's Motion for Directions states: "The harm pleaded

in the supplemental complaint should arise out of the same transaction, occurrence, or event as

described in the initial pleadings."  Order at 8 (Dkt. # 38).  Here, the Supplemental Complaint's

claim does not arise out of the same "transaction, occurrence, or event."  Plaintiff's

Supplemental Complaint does not seek to increase the amount of damages or interest arising

from its earlier claim, but rather seeks damages for entirely new and different alleged breach,

covering entirely different charter hires over a different period that did not arise until ***after*** the

filing of the original complaint and ***after*** defendants were registered in this district.

Unlike amendments of existing claims, ***new claims*** relying on independent operative

facts that are asserted in supplement pleadings under Rule 15(d) do ***not*** relate back to the time

of the filing the original complaint.  For example, in *Blau v. Lamb*, 191 F. Supp. 906 (S.D.N.Y.

1961), the court explained:

> Each alleged violation of Section 16(b), Securities Exchange Act of 1934, 15
> U.S.C.A. § 78p(b), requires proof of independent operative facts peculiar to the
> transactions involved and constitutes a separate claim. Accordingly, the doctrine
> that amendments relate back to the time of the original complaint does not apply,
> and those transactions completed more than two years previous to the plaintiff's
> notice of motion to supplement his complaint are barred by the limitation
> contained in the statute.

*Blau*, 191 F. Supp. at 906 (citations omitted).  Thus, the *Blau* plaintiff could not relate his new,

independent claims back to the original complaint for purposes of defeating the statute of

limitations.  *Id.*; s*ee also William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d

1014, 1057 (9th Cir. 1981) (for claims "unrelated to those alleged in the initial complaint, or

[that] rely on conduct or events different from those involved in the original action, the statute

of limitations should be applied").

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

The same is true here.  Iron Pasha may not relate its new, independent claim back to the original complaint for the purposes of establishing jurisdiction.  The Supplement Complaint asserts a claim for alleged breach of charter hires occurring over the period November 1, 2012 through March 1, 2013, a claim that arose and was asserted only *after* all four defendants had registered in Washington—in May 2012 and September 2012, respectively—by which time all defendants were "found in the district."[1]  Each individual breach requires "proof of independent operative facts peculiar to the transactions involved" and thus constitutes a separate claim that is not subject to relation back to the original compliant.  *See Blau*, 191 F. Supp. at 906.  As a result, an essential element of a proper Rule B action was not met.  On this basis alone, the Court should vacate the attachment and dismiss this Rule B action in its entirety.

### B.  The Court Should Dismiss The Claims Against HNA Because It Is Not A Party To The Maritime Contract And Because Plaintiff Fails to Allege Facts That Establish Alter Ego Liability.

Even if the Court were to determine that the defendants were not found in the district for purposes of Iron Pasha's new claim and the new Rule B attachment it now seeks, that attachment still fails because HNA is not a party to the maritime contact and Iron Pasha fails to allege facts demonstrating that HNA should be charged with alter ego liability for the maritime liabilities of any of the other three defendants.

Among the four required elements of a Rule B attachment, plaintiff must show "a valid prima facie admiralty claim against the defendant."  *See Equatorial Marine*, 591 F.3d at 1210 (citing *Aqua Stoli*, 460 F.3d at 445).  Iron Pasha does not allege it has brought a maritime

---

[1] Maritime attachments serve a dual purpose: first, to "obtain jurisdiction of the [defendant] in personam through its property," and, second, to secure any eventual judgment in plaintiff's favor.  *Seawind Campania, SA. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963).  However, "[t]he two purposes may not be separated ... for security cannot be obtained except as an adjunct to obtaining jurisdiction."  *Id.* at 582. "Thus, Rule B gives potential defendants the choice between subjecting themselves to the jurisdiction of the courts of the district in question, or making themselves vulnerable to the possibility that their property in the district will be attached."  *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 130 (2d Cir. 2009).

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

action against HNA in the London arbitration, nor could it since HNA is not a party to the underlying charter contract.  As a result, Iron Pasha's only hook against HNA is to attempt to assert HNA is an alter ego of the other defendants.

But Iron Pasha's alter ego allegations fail to meet the heightened pleading requirement of Rule E(2)(a), which is more stringent than Fed. R. Civ. P. Rule 8's pleading standard and is intended to prevent a Rule B plaintiff like Iron Pasha from "hold[ing], for a substantial period of time, property to which, in reality, it has no legitimate claim." *Arctic Ocean Int'l, Ltd v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009) (citing *United States v. Premises & Real Prop.*, 889 F.2d 1258, 1266 (2d Cir. 1989)).

To meet its burden under Rule E(4)(f), plaintiff must demonstrate that the evidence shows "a fair or reasonable probability" that plaintiff will prevail on its alter ego claim.  *OS Shipping Co. v. Global Maritime Trust*, 2011 WL 1750449, at *5 (D. Or. May 6, 2011). "Plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Emeraldian Ltd. P'ship v.Wellmix Shipping Ltd.*, 2009 U.S. Dist. LEXIS 89355, *7 (S.D.N.Y. Sept. 28, 2009).  Furthermore, legal conclusions couched as factual allegations "are not facts and cannot substitute for facts" in the Rule B context.[2]  *Arctic Ocean*, 622 F. Supp. 2d at 54 (quoting *Cornell v. Assicurazioni Generali Sp.A.*, 2000 WL 1099844, *1 (S.D.N.Y. Aug 7, 2000)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As one court explained, the heightened pleading standard under

---

[2] Courts are divided on whether the prima facie analysis should look solely to a plaintiff's complaint or also to exhibits submitted by the plaintiff in support of its application. *Compare Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.*, 606 F. Supp. 2d 391, 398 (S.D.N.Y. 2009) (pure pleading standard)) *with Emeraldian*, 2009 U.S. Dist. LEXIS 89355, *8, *Indagro S.A. v. Bauche S.A.*, 652 F. Supp. 2d 482, 492 (S.D.N.Y. 2009), *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006), *Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*, 2009 U.S. Dist. LEXIS 14392, *4 (S.D.N.Y. Feb. 24, 2009), and *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43 (2d Cir. 2008) (applying "reasonable grounds" standard and vacating attachments as a result of insufficient alter ego allegations).  Regardless, Iron Pasha's Complaint fails both on its face and with reference to its exhibits.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 9

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

Rule E "is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings." *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007) (quoting *P.R. Ports Auth. v. Barge KATY-B*, 427 F.3d 93, 105 (1st Cir. 2005)).

Here, as explained below, the alter ego claim against HNA must be determined under English law. And under English law, Iron Pasha fails to plead a cognizable alter ego claim. Even if the Court did not apply English law, that alter ego claim would fail under Chinese law and under U.S. maritime law as well.

This is especially true given the speculative nature of the Iron Pasha's Supplemental Complaint, which is exemplified by the inadequacy of the purported "verification" of Despoina Bacha (Dkt. # 39-7). Other than saying she is located in Athens, Greece, and that she purports to be "the lawful representative" of Plaintiff Iron Pasha, the verification does not identify her actual job or position nor lay any foundation for her purported ability to verify the Supplemental Complaint. Not only does it provide no foundation regarding the Supplemental Complaint's allegations regarding Iron Pasha itself, it provides zero foundation for her unsubstantiated allegations regarding any of the four defendants (all of which are Chinese companies), in particular the allegations supporting a claim for alter ego status against HNA. Moreover, Ms. Bacha does not swear under penalty of perjury that the allegations in the Supplemental Complaint are in fact actually "true and correct." Instead, she seriously qualifies (and thus calls into question) her "verification" by stating that the allegations are true and correct only "to the best of [her] knowledge, information and belief." But she does not explain what "knowledge, information and belief" she possesses that would give any credence to whatever allegations she is purporting to verify.[3]

---

[3] Iron Pasha also makes passing allegations of "fraud" (*see* Supp. Compl. ¶¶ 45-46), but there can be no legitimate dispute that this reference falls well short of the "particularity" pleading requirements of Rule E(2)( a) and Fed. R. Civ. P. 9(b).

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

**1.   Plaintiff's Alter Ego Claims Fail Under English Law.**

**a.   English Law Governs The Alter Ego Analysis.**

The existence of a valid prima facie admiralty claim against a defendant has two components: (1) that the claim sounds in admiralty and (2) that the plaintiff has stated a valid prima facie claim against the defendant. *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, No. 12 Civ. 2213, *5 (S.D.N.Y. Jan. 11, 2013) (Bugaighis Decl. Ex. B).[4] Courts apply U.S. law to assess whether the claim sounds in admiralty—a procedural question of subject matter jurisdiction—but courts apply the substantive law governing the underlying claim to assess the *prima facie validity* of that claim. *Id.*; *see also Al Fatah Int'l Nav. Co. v. Shivsu Canadian Clear Waters Tech. (P) Ltd.*, 649 F. Supp. 2d 295, 300 (S.D.N.Y. 2009). As the *Al Fatah* court explained:

> Rule B supplies the procedure by which a valid prima facie admiralty claim can give rise to a writ of maritime attachment, … but the existence of a valid claim turns on substantive law. ***Where the substantive law underlying the claim is foreign, it would make no sense to determine the claims' prima facie validity under U.S. law.***

649 F. Supp. 2d at 300 (emphasis added) (citation omitted); *see also Sonito Shipping Co. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007); *Indagro*, 652 F. Supp. 2d at 490.

Iron Pasha's claim arises from a maritime charter that is expressly governed by English Law. In cases where, as here, the parties have agreed to a specific foreign choice of law and forum, courts have "considered whether the plaintiff alleged a *prima facie* claim under the substantive law governing the parties' dispute." *Indagro*, 652 F. Supp. 2d at 490; *Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008); *Sonito*, 478 F. Supp. 2d at 536-37; *Bottiglieri Di Na Vigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588, 591 (S.D.N.Y. 2007); *OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, 2007 U.S. Dist.

---

[4] This case is now on appeal in front of the Second Circuit. *See Blue Whale Corp. v. Grand China Shipping Development Co., Ltd., et al.*, No. 13-0192 (2d Cir. 2013).

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   LEXIS 46841 (S.D.N.Y. June 26, 2007).  The question whether Iron Pasha has stated a *prima*

2   *facie* alter ego claim must therefore be analyzed under English law.

3       In *FR 8 Singapore Pte. Ltd* v. *Albacore Maritime, Inc.*, 794 F. Supp. 2d 449 (S.D.N.Y.

4   2011), the court squarely rejected FR 8 Singapore's attempt to evade the English choice of law

5   clause with respect to a claim seeking to compel arbitration in London against alleged alter

6   egos.  The court observed that "[t]he tenuous connections to the United States in this case make

7   it unlikely that the MOA signatories viewed the federal common law of this country as the

8   background principle that would govern their corporate separateness; it seems much more

9   likely that the English choice-of-law clause evinces an understanding that the English idea of

10   corporate separateness would serve as the relevant background principle."  *Id.* at 458.  The

11   court then strongly cautioned:

> 12   [T]o the extent that the federal common law of piercing the corporate veil is
> 13   more favorable than the chosen law in a breach of contract case, mandating the
>     application of our law in spite of the choice-of-law clause invites international
> 14   plaintiffs who seek to force deep-pocketed corporate parents to be liable for their
>     subsidiaries' breaches of contract and are disgruntled with the choice of law in
> 15   the contract to use the courts of the United States as a way to get around their
>     bargain.

16   *Id.*  Such an approach, the court emphasized, "invites forum-shopping, effectively allowing the

17   United States to become a veil-piercing clearing house and giving plaintiffs a second

18   opportunity at negotiating the choice of law in the contract so long as they are able to cloak the

19   issue in the garb of 'arbitrability.'"  *Id.* This second bite at the apple hardly achieves "the

20   orderliness and predictability essential to any international business transaction."  *Id.* (quoting

21   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also*

22   *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004).

23       Although *FR 8 Singapore* and *Motorola* each dealt with the issue of compelling

24   arbitration, this rationale is equally applicable in this "alter ego" attachment case too, where

25   ultimately Iron Pasha will be seeking to enforce an English arbitration award against an alleged

26   alter ego of Shanghai Development and Chain Glory through HNA.  The underlying charter

27

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

claim is subject to English law and arbitration.  It has no connection with the United States apart from the fact that the alleged "alter ego"—i.e., HNA—allegedly owns stock in a Chinese company (Hainan Airlines) that flies planes periodically to Washington.  None of the parties in this action are U.S. corporations, the vessel is foreign flagged, and the charter did not involve the carriage of cargo to the U.S.  In short, there is no legitimate reason why U.S. law should govern the analysis; rather, English law—i.e., the law of the contract in respect of which Iron Pasha seeks its relief—should apply.

> **b.**   **Plaintiff Has Failed To Allege A Prima Facie Alter Ego Claim Under English Law.**

HNA has submitted the declaration of Graham Charkham, an English barrister, to explain the English law on piercing the corporate veil.  *See* Bugaighis Declaration, Ex.C (Declaration of Graham Charkham and operative English case law).  In *Blue Whale* and *FR 8 Singapore*, the courts expressly relied upon Mr. Charkham's expert declaration to decide similar maritime "alter ego" issues under English law.

Both *Blue Whale* and *FR 8 Singapore* are similar to the matter here.  Like Iron Pasha, FR 8 Singapore claimed that the subsidiaries at issue were inadequately capitalized, that the entities "intermingled funds," and that the subsidiaries were nothing more than a "shell company" of the parent defendants.  *FR 8 Singapore*, 794 F. Supp. 2d at 460-461.  In fact, FR 8 Singapore went even further than Blue Whale and Iron Pasha and alleged that the parent and subsidiaries shared "personnel" and "office space" and that a certain parent defendant paid the subsidiary's debts.[5]  *Id.* Both Blue Whale and FR 8 Singapore argued that U.S. veil piercing law should apply to the dispute.  The courts rejected those arguments and determined that English law should control.  *FR 8 Singapore*, 794 F. Supp. 2d at 460-61; *Blue Whale*, No. 12 Civ. 2213, at *9.

---

[5] Although Iron Pasha vaguely alleges that GCL has "paid debts" of unrelated subsidiaries in other unrelated cases, there is no specific allegation that HNA paid any of Shanghai Development's or Chain Glory's "debts." *See* Supp. Compl. ¶ 34.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 13

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

Under English corporate law, a "corporation is a legal entity separate from, and distinct from, the shareholders and officers of the company." *FR 8 Singapore*, 794 F. Supp. 2d. at 459; *Blue Whale*, No. 12 Civ. 2213, at *8.  Therefore, "ownership and control of a company are not of themselves sufficient to justify piercing the veil." *FR 8 Singapore*, 794 F. Supp. 2d at 459; *Blue Whale*, No. 12 Civ. 2213, at *8.  The *FR 8 Singapore* court recognized that "English courts will pierce the corporate veil in limited circumstances," and distilled the basic principles as follows:

> First, ... the fact that a person engages in the carrying on of a business using a duly incorporated, yet seemingly artificial, entity is not sufficient to justify piercing that entity's veil ...legal formalisms must be respected even at the risk of abiding a seeming injustice ... Accordingly, veil piercing is quite rare under English law.

> Second, courts may pierce the corporate veil only where special circumstances exist indicating that it is a mere façade concealing the true facts. Evidence of impropriety is a necessary condition to justify veil-piercing, but impropriety on its own is insufficient; the impropriety must be linked to the use of the company structure to avoid or conceal liability.

> Third, where a corporate structure is interposed for the purpose of shielding a defendant from liability ..., the plaintiffs' ability to recover from the defendant on a veil-piercing theory turns on whether the defendant had already incurred some liability to the plaintiff at the time he interposed the corporate structure. The distinction in this principle is one between the defendant using a corporate structure to evade rights of relief others already possess against him and a defendant who uses a corporate structure to evade rights of relief others may possess against him in the future.

*Id.* at 459-60 (quoting *In re Tyson*, 433 B.R. 68, 86-88 (S.D.N.Y. 2010)) (citations omitted); *see also Blue Whale*, No. 12 Civ. 2213, at **8-9.  Applying these principles, the courts in both *Blue Whale* and *FR 8 Singapore* determined that the plaintiffs did ***not*** state a claim to pierce the subsidiaries' corporate veils.  *FR 8 Singapore*, 794 F. Supp. 2d at 460-61; *Blue Whale*, No. 12 Civ. 2213, at *9.  The *FR 8 Singapore* court stressed that the plaintiffs' allegations, even if taken to be true, merely proved that the parent companies "owned and controlled" the subsidiaries, allegations that are in and of themselves insufficient to trigger alter ego liability.  *FR 8 Singapore*, 794 F. Supp. 2d at 460-61.  The plaintiffs' "facts" also did not suggest that any

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 14

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

"impropriety" was actually linked to the corporate structure of the subsidiaries, as required by the second principle of English law.  *Id.* at 460-61; *Blue Whale*, No. 12 Civ. 2213, at *9.  And there was no allegation that the plaintiffs had a right of relief against the parent corporations at either the time the subsidiaries were created or at the time of the transactions in question to evade *existing* liabilities.  *FR 8 Singapore*, 794 F. Supp. 2d at 461; *Blue Whale*, No. 12 Civ. 2213, at *9.  Accordingly, the subsidiaries were not considered to be "façades," but instead legitimate subsidiary corporations.  *FR 8 Singapore*, 794 F. Supp. 2d at 461; *Blue Whale*, No. 12 Civ. 2213, at *9.

The same conclusion is warranted here.  Although Iron Pasha's Supplemental Complaint contains numerous conclusory allegations and attaches various documents, it actually provides *no* support for the alleged alter ego relationship between HNA and Shanghai Development and Chain Glory.  Iron Pasha concedes that HNA, GCL, Shanghai Development and Chain Glory are in fact separate corporate legal entities.  Supp. Compl. ¶¶ 4-6, 6, 21. The separation between these companies is entitled to recognition and respect under English law.  *See* Charkham Declaration, Pg. 14-15 (citing to *Linsen International vs. Humpuss Sea Transport* [2011] 2 Lloyd's Rep 663, ¶ 40).  As such, Iron Pasha has the burden to prove that "special circumstances exist" to pierce through the corporate veils of these defendants.  *See* Charkham Declaration, Pg. 2 ¶ 5.[6]

Iron Pasha may argue that, under the second principle of English law, Shanghai Development and Chain Glory are "façades," but that argument is without merit.  In order to pierce a corporation's veil because it acted as a mere "façade," English law requires "an element of impropriety or dishonesty."  *See Tyson*, 433 B.R. at 87.  The "closeness" of

[6] To the extent Iron Pasha claims that Development and Chain Glory are undercapitalized, it has not claimed that GCL is undercapitalized and in fact claims that GCL pays Development and Chain Glory's debts and that it has guaranteed those debts, as with the charter at issue here.  In order to hold HNA responsible for Development and Chain Glory's debts, it is necessary for Iron Pasha to reach through GCL to get to HNA.  But Iron Pasha has made no showing that GCL cannot pay the debt at issue here.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

companies within a group, control of management from the true place of business, and even intra-group lending are not, by themselves, evidence of nefarious corporate activity.  Charkham Declaration, Pg. 14-15 (citing *Linsen International vs. Humpuss Sea Transport* [2011] 2 Lloyd's Rep 663, ¶ 38-43).  Moreover, "the fact that a 'façade' company has breached a contract, is not, in itself, dispositive of the veil-piercing inquiry."  *See Tyson*, 433 B.R. at 87 (citing *Dadourian Grp. Int'l Inc.* v. *Simms*, [2006] EWHC 2973, ¶ 683 ("It is not permissible to lift the veil simply because a company has been involved in wrong-doing, in particular simply because it is in breach of contract.")).  There must be evidence "that the purported contract was a sham or 'façade,' from the outset."  *See Linsen International vs. Humpuss Sea Transport* [2011] 2 Lloyd's Rep 663, ¶ 104.

No such allegation is made here.  Instead, the only references to fraud are vague and unsubstantiated, including alleged "fraudulent trading practices," and that defendants used the "corporate form abusively to perpetrate fraud and commit other injustice." Supp. Compl. ¶¶ 45-46.  But Iron Pasha nowhere alleges that HNA was in fact obligated to provide Shanghai Development or Chain Glory with funds, or alternatively, that HNA "siphoned" funds from those companies.

Moreover, Iron Pasha has not alleged—and cannot allege—that it had any right of relief against HNA at the time Shanghai Development and Chain Glory entered into existence as subsidiary corporations.  Nor has Iron Pasha alleged—nor could it—that Shanghai Development or Chain Glory were established by HNA to evade "existing liabilities" towards Iron Pasha.  Shanghai Development, Chain Glory, and GCL are not façades—and in fact paid the 36th, 37th and 38th hires that were the subject of Iron Pasha' original claim.  *See* Josh Shen Xin Declaration.  That these defendants are alleged not to have paid more recent obligations does not make them façades, or mean that their parent companies (who were never parties to the charter contract) are now liable for all obligations.  In short, Iron Pasha's paper-thin allegations of "impropriety" fall well below the three benchmarks that are necessary to find

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

alter ego liability under English law.  Accordingly, the Court should vacate the attachment and dismiss this action.

### 2.        Plaintiff's Alter Ego Claims Fail Under Chinese Law.

Even if English law did not apply, the law with the closest nexus to the parties' dispute would be Chinese law, not U.S. law.  Chinese law recognizes the separateness and valid existence of these separate corporate defendants.  Article 3 of the Company Law of the People's Republic of China (the "Company Law") provides that a company bears liability for its own debts.  *See* Declaration of Xingzheng Hou ("Hou Decl.") ¶ 13.  The Company Law further provides that a subsidiary of a company is a legal person and shall be independently liable for its own debts.  *Id.* ¶ 14.  In other words, under Chinese law, a company is not liable for the debts of its subsidiaries or affiliates.  *Id.* ¶ 15.

As described above, Iron Pasha knew it was in entering into charter contracts with Shanghai Development and Chain Glory—Chinese corporations—and that such companies were subsidiaries of GCL (another Chinese corporation), which is why it required GCL to guarantee the obligations of Shanghai Development and Chain Glory under the charter.  Iron Pasha knew or should have known the structure of these companies under Chinese law at the time it entered into the charter that is now in dispute.  Under Chinese law, Iron Pasha has no basis to assert an alter ego claims against HNA.

### 3.        Plaintiff's Alter Ego Claims Fail Under U.S Law.

Even if Iron Pasha's alter ego claims are evaluated under U.S. law, its allegations are nothing more than speculative legal conclusions couched as facts, wholly insufficient to connect HNA to the underlying dispute between Iron Pasha and the other three defendants.

Under federal maritime law, "corporate entities are presumed to be distinct." *See, e.g.*, *Emeraldian*, 2009 U.S. Dist. LEXIS 89355, at *6; *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997); *see also Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986).  Veil piercing is a rare exception to the well-settled American principle of limited

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

liability for individual and corporate shareholders.  *See David v. Glemby Co.*, 717 F. Supp. 162, 166 (S.D.N.Y. 1989); *see also Dolco*, 486 F. Supp. 2d at 271.  Consequently, there is a "'presumption of separateness' afforded to related corporations," *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 22 (2d Cir. 1976) (citations omitted), which has correctly led to a "reluct[ance] to disregard the separate existence of related corporations by piercing the corporate veil" on the part of the district courts.  *Kashfi v. Philbro Salomon, Inc.*, 628 F. Supp. 727, 732-33 (S.D.N.Y. 1986).

In *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, the Second Circuit held: "absent findings of fraud or bad faith, a corporation ... is entitled to a presumption of separateness from a sister corporation ... even if both are owned and controlled by the same individuals."  502 F.2d 674, 677 (2d Cir. 1974). "Veil piercing is only appropriate where the parent used the corporate entity to perpetrate a fraud, or where the parent has so dominated and disregarded the corporate form's entity that the entity primarily transacted the parent's business rather than its own." *See, e.g.*, *Emeraldian*, 2009 U.S. Dist. LEXIS 89355, at *6 (internal quotation marks omitted).

The Second Circuit has identified a number of factors that are relevant in evaluating alter ego claims: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion displayed by allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guaranty of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.  *See MAG Portfolio Consult, GmbH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 774 F. Supp. 840, 844-85 (S.D.N.Y. 1991) (applying these factors in the admiralty context); *Emeraldian*, 2009 U.S. Dist. LEXIS 89355, at **6-7 (applying these

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

factors in Rule B context).  A proper consideration of the *MAG Portfolio* factors reveals that Iron Pasha has failed to state a *prima facie* alter ego claim against HNA under U.S. law.

As a starting point, Iron Pasha has **not** claimed that HNA, Shanghai Development and Chain Glory utilize overlapping directors (the 4th factor), that the two entities share common office space, address and telephone numbers (the 5th factor), that HNA guaranteed Shanghai Development and Chain Glory's debts (the 9th factor),[7] or that HNA, Development or Chain Glory share property (the 10th factor).  Additionally, although Iron Pasha attempts to "fuse" the four companies by arguing that Shanghai Development and Chain Glory use HNA's business logo, Supp. Compl. ¶ 36, the mere fact that a parent's brand or logo may appear on the subsidiary's property is **not** a significant factor in an alter ego analysis.  *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 9 (D.D.C. 2003) ("joint promotion without more does not mandate the finding that a subsidiary is a mere shell for its parent corporation").

Iron Pasha's case hinges on its cursory allegations that HNA and GCL dominated Shanghai Development or Chain Glory, that these companies were "undercapitalized," and that they were merely shells through which HNA and GCL conducted their business. Supp. Compl. ¶¶ 26, 46.  Again, although Iron Pasha claims that Shanghai Development and Chain Glory are undercapitalized, it has not claimed that GCL is undercapitalized, or that GCL cannot pay the debt as guarantor here.

Iron Pasha contends that ''their ownership and control is so intertwined and fused that they are distinct from one another only in a pro forma manner," *id.* ¶ 21, and that HNA actually "dominates" and "controls" Shanghai Development and Chain Glory through GCL.  *Id.* ¶ 25. These "facts" are nothing more than the kind of vague, conclusory allegations that are insufficient to establish an alter ego relationship under U.S. law.  The Court in *Emeraldian* held

---

[7] It is undisputed that GCL, as the guarantor to the charter, guaranteed debts for Development and Chain Glory.  However, despite Iron Pasha's bald allegations related to "Defendants routinely guarantee[ing] the performance of each other's obligations," Supp. Compl. ¶¶ 35, 38, Iron Pasha fails to make a specific allegation regarding HNA guaranteeing obligations.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

that such naked accusations (such as a parent did not observe the "necessary and appropriate corporate formalities and separation," and that the parent dominated and controlled the subsidiary) were "insufficient to support a finding that the parties are alter egos of one another absent evidence of any conduct that is 'inconsistent with a proper regard for corporate formalities and for the separate corporate identities of the various allegedly affiliated corporations.'" 2009 U.S. Dist. LEXIS 89355, at **9-11 (quoting *Kola*, 2009 U.S. Dist. LEXIS 14392, at *2); *see also Arctic Ocean*, 622 F. Supp. 2d at 54.

In the world of maritime commerce, if "allegations such as these [were] adequate to support an attachment, the property of corporations in any way sharing common ownership with a party to a maritime dispute would routinely be interfered with, without any likelihood that the party would ultimately be found liable in the underlying dispute." *Kola*, 2009 U.S. Dist. LEXIS 14392 at *7. Iron Pasha was well aware it was dealing with subsidiaries rather than the parent corporation in absence of specific pleadings stating otherwise. Iron Pasha has failed to show HNA is an alter ego of Shanghai Development or Hong Kong Chain Glory.

     **C.**    **Even If Plaintiff Could Prove HNA Has Alter Ego Liability And Is Properly A Defendant In This Case, HNA Has No Property In The Jurisdiction.**

While the Order Granting Plaintiff's Motion for Directions authorized Iron Pasha to pursue attachment of Hainan Airlines stock owned by HNA, the Order specifically states that "any arguments that Hainan Airlines stock is not subject to Rule B attachment, or that HNA is not liable for other defendants breach are properly brought in a Rule E(4)(F) motion." Order at 14-15 (Dkt. # 38). Here, because that stock is located in China, not in this district, it is plainly not the proper subject of a Rule B attachment. *See Equatorial Marine*, 591 F.3d at 1210 (citing *Aqua Stoli*, 460 F.3d at 445) (plaintiff must show the defendant's property can be found within the district).

     **1.**    **Under Chinese Law, Hainan Stock Is Located In China.**

"A federal court sitting in admiralty must apply federal maritime choice-of-law rules." *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997) (citation omitted).

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 22167621v3 0095196-000002

1  "[M]odern choice of law analysis, whether maritime or not, generally requires the application

2  of the law of the state with the 'most significant relationship' to the substantive issue in

3  question." *Id.* at 673 (quotation marks omitted); *see also* Restatement (Second) of Conflicts of

4  Laws §§ 188, 6 cmt. c.  In addressing conflicts of laws, courts consider the following factors: 1)

5  the needs of the interstate and international systems; 2) the relevant policies of the forum; 3) the

6  relevant policies of other interested states and the relative interests of those states in the

7  determination of the particular issue; 4) the protection of justified expectations; 5) the basic

8  policies underlying the particular field of law; 6) certainty, predictability and uniformity of

9  result; and 7) ease in the determination and application of the law to be applied.  *Aqua-Marine*,

10  110 F.3d at 674 (citing Restatement (Second) of Conflicts of Laws § 6 cmt. d).  Likewise,

11  under the "internal affairs doctrine," the rights and obligations of corporations to their

12  shareholders are governed by the law of the state of incorporation.  *See Edgar v. MITE Corp.*,

13  457 U.S. 624, 645 (1982); Restatement (Second) of Conflicts of Laws § 302.

14  Here, Hainan Airlines is a Chinese corporation, whose stock was issued in China and is

15  traded on the Shanghai Stock Exchange.  HNA Group is likewise located in China and it holds

16  its share certificates in China.  Accordingly, under all conflict of laws principles, all issues

17  regarding Hainan stock are governed by Chinese law.

18  Under Chinese law, each purchaser of stock in a Chinese corporation receives from the

19  issuing company a share certificate printed primarily in paper form.  Hou Decl. ¶ 5.  Because

20  HNA's principal place of business is in China, under Chinese law the location of the stock

21  HNA owns in Hainan is located in China.  *Id.* ¶ 6.  Ownership of shares must also be registered

22  at the China Securities Depository Clearing Corporation, LTD (a corporation owned by the

23  People's Republic of China).  *Id.* ¶ 7.  As a result, under Chinese law, no shares of Hainan

24  stock held by HNA are located in this jurisdiction.  On that basis alone, the attempt to attach

25  Hainan stock fails as a matter of law.

26

27

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 21

## 2.     Under U.S. Law, Hainan Stock Is Located In China.

HNA's stock in Hainan is located in China under U.S. law as well.  It is well settled that "shares of stock are located in the state in which the issuing entity is incorporated, regardless of where the certificates, which indicate ownership of the shares, are located." *Marine Midland Bank, N.A. v. Jawad & Haidar Y. Abulhasan Co.*, U.S. Dist. LEXIS 15250, at *4 (D. Or. Nov. 2, 1987) (citing *Jellenik v. Huron Copper Mining Co.*, 177 U.S. 1 (1900)); *see also Sylvania Indus. Corp. v. Lilienfeld's Estate*, 132 F.2d 887, 891 (4th Cir. 1943).  Moreover, the Uniform Commercial Code requires the actual seizure of stock certificates to effect a valid attachment or levy upon an interest in corporate stock.  *See U. S. Indus., Inc. v. Gregg*, 540 F.2d 142, 143 (3d Cir. 1976) (citing U.C.C. § 8-317 (1)).  Because Hainan Airlines is incorporated in China and HNA actually holds the stock certificates in China, Hainan Airlines' stock is not found in the district and is not subject to the Court's jurisdiction under Rule B.

Under federal law, the situs of shares of stock is where the corporation is domiciled. *Jellenik v. Huron Copper Mining Co.*, 177 U.S. 1, 13 (1900) ("the property represented by its certificates of stock may be deemed to be held by the Company within the State whose creature it is"); *Wirt Franklin Petroleum Corp. v. Gruen*, 139 F.2d 659, 660 (5th Cir. 1944) ("capital stock of a corporation has a situs for purposes of attachment, garnishment, and execution in the state of its corporate domicile only"); *Kitzer v. Phalen Park State Bank*, 379 F.2d 650, 652 (8th Cir. 1967) ("shares of stock of the corporation as distinguished from the certificates were subject to garnishment at the situs of the corporation").

Footnote 2 of the Order Granting Motion for Directions states: "Iron Pasha has demonstrated—to the extent required at this initial stage—that stock is intangible property subject to attachment under Supplement Rule B(1)(d)(ii).  (*See* Mot. at 7-8 (citing *Miller v. United States*, 78 U.S. 268, 287 (1870)).)"  But the reliance on *Miller* is misplaced.  *Miller* is not a Rule B case, nor even a maritime case.  And it does not support the notion that stock of a non-U.S. corporation is found in the United States simply because that non-U.S. corporation

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 22

DWT 22167621v3 0095196-000002

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

may do some business here. The operative facts of *Miller v. United States* are set forth in the first paragraph of the *Miller* Court's opinion:

> This was a proceeding under the acts of Congress of August 6th, 1861, and July 17th, 1862, **to confiscate shares of stock in two corporations created by the State of Michigan.**  The stock had been seized by the marshal of the district, acting indirectly under orders of the President of the United States. The marshal made return to the district attorney that he had seized it, with all dividends, interest, and moneys due thereon, specifying in his return the stock-certificates by which it was represented, and describing the mode of seizure to have been serving a notice thereof personally upon the vice-president of one company, and upon the president of the other.  An information was then filed in the District Court, in the nature of a proceeding *in rem*, against the stock, averring it to be the property of Samuel Miller, of Amherst County, Virginia, a rebel citizen and inhabitant of the United States.
> . . .
> The record then shows that on the day designated in the monition, after default of all persons had been duly entered, and after reading the depositions which had  been taken on behalf of the United States, the shares of stock were condemned as forfeited and a writ of *venditioni exponas* was ordered, under which they were sold.  After this Miller applied by petition to the District Court, praying that the decree of condemnation might be opened and set aside, but the prayer of the petition was denied.

*Miller*, 78 U.S. at 292-293 (emphasis added).

Miller contested the seizure of his stock and the District Court's order authorizing the condemnation and sale of the stock, but the Supreme Court affirmed, holding that serving notice on the corporation's officers was effective to effectuate the seizure of the stocks.  *Id.* at 298.  But *Miller* does not stand for the proposition that shares of a ***foreign*** corporation can be attached wherever that corporation may do business. To the contrary, *Miller* simply allowed the confiscation of stock in the District Court for the Eastern District of Michigan of "two corporations **created by the State of Michigan**."  *Id.* at 292, 313 (emphasis added).  If Hainan Airlines was a Washington corporation, its stock could be said to be located in Washington and potentially subject to attachment here.  But it's not—it's a Chinese corporation and *Miller* has no application here.

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Rule B permits attachment of intangible property, but that the intangible property still must be found in the district.  Under both Chinese and U.S. law, stock of a Chinese company (Hainan Airlines) owned by another Chinese company (HNA) is located in China.  Iron Pasha's effort to attach that stock under Rule B necessarily fails.

**D.    The Court Should Dismiss The Claims Against Shanghai Development, Chain Glory, And GCL Because None Of Those Defendants Have Assets In The Jurisdiction, Nor Does The Complaint Allege They Do.**

As explained above, Iron Pasha's allegations with respect to HNA, such as they are, are insufficient to establish jurisdiction over HNA in this Rule B action.  Moreover, the Complaint makes no specific allegations ***at all*** with respect to Rule B jurisdiction over Shanghai Development, Chain Glory or GCL.  The Complaint does not allege any shareholder connection between Hainan Airlines and these three defendants, nor allege facts showing that any of them have property in this district, either directly or in the hands of garnishee defendant Hainan Airlines.  Accordingly, no Rule B jurisdiction exists, or was ever obtained, over Shanghai Development, Chain Glory or GCL and the Court should dismiss these three defendants from the action in any event.

## V.  CONCLUSION

For the foregoing reasons, the Court should vacate the attachment and dismiss this Rule B action in its entirety.

DATED this 3rd day of July, 2013.

Davis Wright Tremaine LLP
Attorneys for Defendants Shanghai Grand China Shipping
Development Co., Ltd., Hong Kong Chain Glory
Shipping Co., Ltd.,  Grand China Logistics Holding
(Group) Company Limited, and HNA Group Co., Ltd.

By   _s/  William K. Rasmussen_
William K. Rasmussen, WSBA #20029
Zana Z. Bugaighis, WSBA # 43614
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Phone: 206-757-8125, Fax:   206-757-7125
E-mail: billrasmussen@dwt.com,
        zanabugaighis@dwt.com

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel for record who receive CM/ECF notification.

DATED this 3rd day of July, 2013.

Davis Wright Tremaine LLP
Attorneys for Defendants Shanghai Grand China Shipping Development Co., Ltd., Hong Kong Chain Glory Shipping Co., Ltd., Grand China Logistics Holding (Group) Company Limited, and HNA Group Co., Ltd.

By _s/ William K. Rasmussen_____
William K. Rasmussen, WSBA #20029
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Phone: 206-757-8125
Fax:    206-757-7125
E-mail: billrasmussen@dwt.com

MOTION TO DISMISS COMPLAINT AND VACATE PROCESS
OF MARITIME ATTACHMENT (C12 - 0621) — 25

DWT 22167621v3 0095196-000002

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700