UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IRON PASHA, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHANGHAI GRAND CHINA SHIPPING DEVELOPMENT CO., LTD, et al. <br><br> Defendants, <br><br> HAINAN AIRLINES COMPANY LIMITED, <br><br> Garnishee. | CASE NO. C12-0621JLR <br><br> ORDER DISMISSING COMPLAINT AND VACATING SUPPLEMENTAL RULE B ATTACHMENT |

## I.     INTRODUCTION

Before the court are two motions: (1) Defendants Shanghai Grand China Shipping Development Co. Ltd. ("Shanghai Development"), Hong Kong Chain Glory Shipping Co. LTD ("Chain Glory"), Grand China Logistics Holdings (Group) Company Limited

ORDER- 1

("GCL"), and HNA Group Co. Ltd.'s ("HNA") (collectively "Defendants") motion to dismiss Plaintiff Iron Pasha, Inc.'s ("Iron Pasha") complaint and to vacate the Federal Rules of Civil Procedure, Supplemental Rule B ("Rule B") process of maritime attachment (Def. Mot. (Dkt. # 45)), and (2) Garnishee Hainan Airlines Company Limited's ("Hainan Airlines") motion to quash the Rule B process of maritime attachment and vacate the Federal Rules of Civil Procedure, Supplemental Rule E ("Rule E") directions (Garn. Mot. (Dkt. # 49)).  The court has reviewed the motions, all submissions filed in support of and opposition to the motions, the balance of the record, and the applicable law.  Being fully advised, the court grants both motions, dismisses Iron Pasha's complaint without prejudice, and vacates the Rule B process of maritime attachment and Rule E directions.

## II.  BACKGROUND

This is an ancillary proceeding to an admiralty case in which Iron Pasha claims that Defendants are liable for breach of contract.  Iron Pasha filed this ancillary proceeding to obtain security for its substantive claims, which are in front of an English arbitral tribunal.  The lawsuit underlying the instant action arises out of Iron Pasha's allegation that Defendants breached and repudiated a bareboat charter party contract for Iron Pasha's ship, the M/V GCL ARGENTINA.  Iron Pasha entered into the charter party contract with Defendants Development, Chain Glory, and GCL in April 2010.  The contract called for Defendants to pay Iron Pasha $19,800.00 per day in exchange for Defendants' use of the seagoing vessel. (Compl. (Dkt. #1) Ex. 1 at 2.)  Iron Pasha asserts that Defendants breached the charter by regularly failing to pay this amount.  (*See*

*generally* 1st Supp. Compl. (Dkt. #40-1).) Iron Pasha also claims that Defendant HNA is liable for Development, Chain Glory, and Holding's breach because all four defendants share the same corporate identity, though they purport to be separate business entities. (*See generally id*.) The merits of this dispute will be decided by an arbitration panel in London, where Iron Pasha intends to claim damages resulting from Defendants' alleged breach. When Iron Pasha filed its First Amended Verified Complaint in April 2012, its alleged damages were $1,339,984.50. Iron Pasha now asserts that the damages total $3,118,771.11 due to Defendants' alleged continuing breach. (1st Supp. Compl. at 10.)

In April 2012, Iron Pasha filed a complaint and motion to attach property belonging to HNA in the Western District of Washington in order to obtain quasi in rem jurisdiction over Defendants and security for the London arbitration. (*See* Compl. at 8-10 (citing Fed. R. Civ. P., Supp. R. B)); *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2nd Cir. 1996). The court granted Iron Pasha's motion in April 2012 and issued process to facilitate the attachment of $1,339,984.50 of Defendants' in-district property. (4/30/12 Order (Dkt. # 20).) The property consisted of stock HNA holds in Hainan Airlines. (*See* Compl.; Mot. to Attach 1 (Dkt. # 4).) On May 8, 2012, Iron Pasha filed notice that it served Hainan Airlines consistent with the service requirements of Federal Rules of Civil Procedure, Supplemental Rule E ("Rule E"). (*See* Serv. of Summons Exec. (Dkt. # 22).)

ORDER- 3

Nearly one year later, on March 7, 2013, Iron Pasha filed a motion for directions pursuant to Rule E(4)(d).[1] (Mot. for Directions (Dkt. # 26).) The court granted Iron Pasha's motion, directing Hainan Airlines to mark the encumbrance against HNA's stock in its financial records. (*See* 5/23/13 Order (Dkt. # 38).) The court also granted Iron Pasha leave to file a supplemental verified complaint pursuant to Federal Rule of Civil Procedure 15(d), amending its alleged damages from $1,339,984.50 to $3,118,771.11. (*See id.*) Defendants' objections to Iron Pasha's Rule E motion for directions largely related to the underlying validity of the attachment and the situs of the stock at issue. (*See* 4/1/13 Resp. (Dkt. # 32) at 2, 7-10.) Yet, for more than one year following the issuance of the maritime attachment, Defendants had failed to file a Rule E(4)(f) motion to challenge or vacate the order of attachment.[2] *See* Fed. R. Civ. P., Supp. R. E(4)(f). Thus, the court determined "that the validity of the attachment [wa]s not presently before [it]." (5/23/13 Order at 13.) The court nevertheless acknowledged that "[n]othing in [its] order granting Rule E directions] preclude[d] Defendants from bringing . . . arguments relating to the validity of the attachment . . . in a Rule E(4)(f) motion" and "that it is Defendants' prerogative to [do so]." (*Id.* at 13-14.) Defendants have now filed a motion to dismiss the complaint and a Rule E(4)(f) motion to vacate the order of attachment.

---

[1] Rule E(4)(d) states that "[t]he marshal or other person or organization having the warrant may at any time apply to the court for directions with respect to the property that has been attached, or arrested . . . ." Fed. R. Civ. P., Supp. R. E(4)(d).

[2] Rule E(4)(f) states that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated . . . ." Fed. R. Civ. P., Supp. R. E(4)(f).

ORDER- 4

(*See generally* Def. Mot.)  In addition, Hainan Airlines has filed a motion to quash the Rule B maritime attachment and the Rule E directions.  (*See generally* Garn. Mot.)  Thus, the validity of the attachment is now squarely before the court via both Defendants' and Hainan Airlines' motions.  The court now turns to those motions.

### III. ANALYSIS

Rule B maritime attachments serve the dual purpose of obtaining jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009) (mini en banc).  The elements for a Rule B writ of maritime attachment are: "(1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing *Aqua Stoli Shipping*, 460 F.3d at 445; Fed. R. Civ. P., Supp. R. B).  After receiving notice of the attachment, a defendant may contest it under Rule E(4)(f).  *Equatorial Marine Fuel*, 591 F.3d at 1210 (citing Fed. R. Civ. P., Supp. R. E(4)(f)).  At a Rule E hearing, a defendant may argue that the attachment should be vacated because plaintiff failed to meet one of the four conditions for attachment.  *See id.*; *see also* Fed. R. Civ. P., Supp. R. E, advisory committee's note (1985 amends.) (explaining that at a Rule E hearing, defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings").  Iron Pasha, as

ORDER- 5

the plaintiff, has the burden of justifying a continued attachment. *Equatorial Marine Fuel*, 591 F.3d at 1210 (citing Fed. R. Civ. P., Supp. R. E(4)(f)).[3]

The only property at issue in this proceeding is shares of stock in Hainan Airlines that are owned by HNA. Defendants assert that Iron Pasha has failed to sustain its burden of demonstrating that element three of a Rule B maritime writ of attachment has been met—that property of Defendants can be found within the district. (*See* Def. Mot. at 1, 20-24); *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 69 n.12 (2d Cir. 2009) ("In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest."). Garnishee Hainan Airlines also asserts as ground for quashing the attachment and vacating the directions that the shares of its stock that Iron Pasha seeks to attach are located in China and not within the court's jurisdiction. (Garn. Mot. at 7.) The court agrees with Defendant and Hainan Airlines and on this basis dismisses Iron Pasha's complaint and vacates the Rule B writ of attachment and subsequent Rule E directions.[4]

---

[3] The admiralty rules do not prescribe the form of a Rule E(4)(f) hearing; instead, the form of the hearing is left to the court's discretion. *See Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989). No party has requested oral argument with respect to either motion before the court, and no party has requested a hearing to present any evidence or argument beyond what the parties have presented in their written submissions to the court. The court has carefully reviewed the written submissions of all parties and believes that it is fully informed and advised with respect to the issues at hand.

[4] Defendants also assert that Iron Pasha has failed to meet its burden of demonstrating that Defendants are not found within the district (element two of a Rule B maritime attachment). (*See* Def. Mot. at 1, 6-8.) In addition, Defendants assert that the court should dismiss the claims against HNA because it is not a party to the underlying maritime contract and Iron Pasha has failed to allege facts sufficient to establish alter ego liability. (*See id*. at 8-20.) Hainan Airlines objects to the attachment on a variety of other grounds as well. (*See generally* Garn. Mot.)

Defendants and Hainan Airlines assert that HNA's Hainan Airlines stock is not subject to Rule B attachment because it is not located within the Western District of Washington, but rather in China.[5] (Def. Mot. at 20-24; Garn Mot. at 7.) In order to analyze where Hainan Airline's stock is located, the court must determine what law governs the issue. "[A] court sitting in admiralty must apply federal maritime choice-of-law rules." *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997).) Defendants assert that maritime choice of law analysis "generally requires application of the law of the state with the 'most significant relationship' to the substantive issue in

---

Because the court rules that Iron Pasha has failed to meet its burden of demonstrating that HNA or any other Defendant has property within the Western District of Washington, the court need not reach Defendants' element two or alter ego arguments or Hainan Airlines' other ground for vacating the attachment.

[5] Other than HNA's holdings in Hainan Airlines' stock, Iron Pasha has alleged no other property of Defendants as located within the district. Because Defendants deny Iron Pasha's allegation that they are alter egos of HNA, they also deny any interest in HNA's property. The court need not decide the alter ego issue because even if the Hainan Airlines stock belonged to Defendants, the court concludes that it is not located within this district and therefore not subject to Rule B maritime attachment. Nevertheless, Iron Pasha asserts that because Defendants (other than HNA) have disavowed any interest in HNA's stock, they lack standing to challenge to the attachment or to bring a motion to dismiss. (Resp. to Def. Mot. at 17.) The court finds no merit in this argument. The existence of property of Defendants within the district is one of the basic requirements of a Rule B maritime attachment. Plaintiff's failure to demonstrate this basic requirement is a valid ground for Defendants' motion to quash and to dismiss the complaint. *Equatorial Marine Fuel*, 591 F.3d at 1210; *see also Blueye Navigation, Inc. v. Oltenia Navigation, Inc.*, Nos. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654 (S.D.N.Y. Feb. 17, 1995).

Further, contrary to Iron Pasha's assertion (Resp. to Def. Mot. (Dkt. # 52) at 17), Defendants are entitled under Rule E(8) to enter a restricted appearance for the sole purpose of "defend[ing] against an admiralty and maritime claim with respect to which there has issued in rem, or process of attachment and garnishment." Fed. R. Civ. P., Supp. R. E(8). Nothing in Rule E(8) requires Defendants, who are parties to this action, to make a claim of ownership or interest in the stock at issue in order to enter a limited appearance to defend against Iron Pasha's action.

ORDER- 7

question." (Def. Mot. at 21 (citing *Aqua-Marine*, 110 F.3d at 673).) Iron Pasha concedes that this is the proper test to apply (Resp. to Def. Mot. (Dkt. # 52) at 15), but the parties disagree regarding the outcome of the test's application.

Defendants assert that Chinese law applies to the issue of the location of Hainan Airlines stock because Hainan Airlines is a Chinese corporation, and its stock was issued in China and is traded on the Shanghai Stock exchange. (Def. Mot. at 21.) Further, HNA, the stockholder, is a Chinese corporation and holds its Hainan Airlines stock certificates in China. (*Id.*) Defendants submit a declaration from an attorney admitted to practice law in the People's Republic of China, Mr. Xingzheng Hou, who testifies that, under Chinese law, the stock that HNA owns in Hainan Airlines is located in China.[6] (*See* Hou Decl. (Dkt. # 46) ¶¶ 5-7.)

Iron Pasha responds that Chinese law is inapplicable and the court should look to United States law because "when it comes to maritime attachment and garnishment the state with the most significant relationships . . . is the forum where the attachment or garnishment proceeding is pending . . . based on the presence of the property in its jurisdiction, the plaintiff's choice of forum, and the absence of a dominant foreign choice of law." (Resp. to Def. Mot. at 15 (italics added) (citing *Blue Whale Corp. v. Grand China Shipping Development Co., LTD.*, 722 F.3d 488, 500 (2d Cir. 2013).) This argument, however, is largely circular or a mere tautology because whether Iron Pasha

---

[6] Iron Pasha has not objected to Mr. Hou's credentials as an attorney admitted to practice law in the People's Republic of China or to his qualification as an expert on Chinese law. Further, Iron Pasha has not disputed his recitation of Chinese law.

has fulfilled its burden of establishing the presence of Defendants' property in this district is the very issue the court must resolve. Further, in *Blue Whale*, the case upon which Iron Pasha relies,[7] the "narrative yield[ed] several potential sources of law," including China, Brazil, and Liberia, "none [of which had] a particularly strong connection to the transaction." 772 F.3d at 499. Here, unlike *Blue Whale*, the only potential foreign law at issue is Chinese law. Thus, the *Blue Whale* court's concern about "the absence of a dominant foreign choice of law" is not at issue here. All that remains, then, with respect to Iron Pasha's argument is its own choice of forum. Once again, however, the court is faced with circular reasoning. The court cannot accede to Iron Pasha's choice of forum absent Iron Pasha's demonstration that some property of Defendants exists within the jurisdiction, which is the very issue the court must resolve.

---

[7] Iron Pasha's reliance on *Blue Whale* is misplaced. HNA was also a defendant in *Blue Whale*, but there was no dispute in that action that the property at issue was located within the district. *See Blue Whale*, 722 F.3d at 491, 499. Rather, the *Blue Whale* court was taxed with determining the law to apply with respect to whether the plaintiff had alleged a prima facie alter-ego claim against HNA. *Id.* at 491-92. The court held that although federal maritime law governs the procedural question of whether a claim sounds in admiralty, assessing the prima facie validity of a claim (element one of Rule B writ of maritime attachment) is a substantive inquiry that requires reference to the relevant substantive law that governs the underlying claim. *Id.* at 495. The court then proceeded to engage in choice of law analysis. *Id.* at 495-98. Ultimately, the court concluded that the law of the United States controlled the issue because the United States had the strongest connection to the transaction at issue—namely plaintiff's claim to pierce the corporate veil. *Id.* at 499. The *Blue Whale* court found under the facts of that case that United States law had the "strongest points of contact with this claim by virtue of the location of HNA's property [which was not in dispute], [the plaintiff's] corresponding choice of forum and the unavailability of an alternative forum, and the absence of a dominant foreign choice of law." *Id.* at 499-500. The *Blue Whale* court's application of United States law to the issue of the pirma facie validity of plaintiff's alter ego claim, although interesting, has little application with respect to the choice of law issue that this court faces concerning the location of corporate stock allegedly subject to maritime attachment.

ORDER- 9

Even assuming that the court agreed with Iron Pasha that United States law should apply with respect to the location of Hainan Airlines stock owned by HNA, Iron Pasha cites no United States authority for its position that the stock is located within this district. (*See id.* at 16-17.) Instead, Iron Pasha makes the remarkable assertion, again without citation to authority, that the situs of the stock, as an intangible, "is immaterial." (Resp. to Garn. Mot. (Dkt. # 54) at 10.) This position is contrary to Ninth Circuit law which expressly provides that one of the essential elements required for a Rule B maritime attachment is that property of the defendant can be found within the district. *See Equatorial Marine Fuel*, 591 F.3d at 1210.

Defendants, however, make a persuasive argument that, even if the court were to apply United States law, China would remain the location of Hainan Airlines' stock. The general rule in federal courts is "that shares of stock are located in the state in which the issuing entity is incorporated, regardless of where the certificates . . . are located." *See Marine Midland Bank, N.A. v. Jawad & Haider Y. Abulhasam Co.*, No. 85-1363-FR, 187 U.S. Dist. LEXIS 15250, at *4 (D. Or. Nov. 2, 1987); *see also Jellenik v. Huron Copper Mining Co.*, 177 U.S. 1, 13 (1900) ("As the habitation or domicil of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is . . . ."). [8] Some courts have deemed the location of stocks to be at the issuing company's principle

---

[8] Washington State courts follow this general rule. *See, e.g.*, *Gamble v. Dawson*, 120 P. 1060 (Wash. 1912) (holding that the situs of stock for purposes of jurisdiction of the court was the domicile of the corporation).

ORDER- 10

place of business as well. For example, after recognizing that the situs of capital stock for purposes of garnishment is generally the state of the company's corporate charter, the court in *Writ Franklin Petroleum Corp. v. Gruen*, 139 F.2d 659, 660 (5th Cir. 1944), found that it had jurisdiction over a garnishment proceeding relating to stock where the stock books and the bulk of the issuing corporation's properties and enterprises were located within the court's district, even though the company was incorporated elsewhere. Finally, the Uniform Commercial Code requires the actual seizure of stock certificates to accomplish a valid attachment of levy or upon an interest in corporate stock. *See U.S. Indus., Inc. v. Gregg*, 540 F.2d 142, 143 (3d Cir. 1976) (citing U.C.C. § 8-317 (1)); 11 W. Fletcher, Cycolpedia of the Law of Corporations § 5106, p. 116 (rev. ed. 2011) (Under the UCC, for purposes of attachment, "the general rule is that certificated shares are located where the share certificates are located, since attachment is not complete until the certificates are seized.").

Defendants assert that under any of the foregoing rules, the Hainan Airlines stock held by HNA cannot be found in this district. Hainan Airlines is incorporated in China (*see* Jones Decl. (Dkt. # 26-2) Ex. 1 (attaching Hainan Airlines' responses to Plaintiff's interrogatories) at 4 (Ans. to Int. No. 1)), and there is no evidence before the court that its stock books or the bulk of corporate properties and enterprises are located in this district. Indeed, Hainan Airlines' principle place of business is Hainan Province, China. (*Id.*) Further, HNA actually holds its Hainan Airline stock certificates in China. (Def. Mot. at 22.) Thus, there is no basis under any of the strains of United States law cited above for

ORDER- 11

the court to determine that the Hainan Airline shares at issue are located within this district.

Iron Pasha nevertheless criticizes Defendants' reliance upon precepts from *Marine Midland*, *Jellenik*, and the Uniform Commercial Code, as resting "entirely on state law principles." (Resp. to Def. Mot. at 16.) Iron Pasha asserts that these authorities are "generally inapplicable since [they are] not federal law." (*Id.* at 16.) As noted above, however, Iron Pasha cites no federal law in support of its position that the Hainan Airlines stock at issue is located within this district. Further, there is no question that "[w]hen new situations arise that are not directly governed by legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1409 (9th Cir. 1994). "Federal courts may, and often do, look to state statutory and to precepts of common law which they 'borrow' and apply as the federal admiralty rule." *Id.* (footnote omitted). Thus, there is no error in the court considering federal precedent based on prior state authority or state statutory rules as a guide to determining federal law here. In any event, as noted above, Iron Pasha has offered no alternative source of federal law that supports its position.

Here, there is no need for the court to determine whether Chinese or Untied States law applies because the result is the same under either Chinese or United States law. As described above, if the court were to apply Chinese law, it would conclude that the location of the shares is in China; and if the court were to apply the various strains of United States law cited above, it would also conclude that the location of the shares is in China. The court, therefore, concludes that Iron Pasha has failed to meet its burden of

demonstrating that property of the defendant can be found within the district for purposes of this Rule B garnishment proceeding.

Because Iron Pasha has failed to establish one of the conditions necessary for a Rule B maritime garnishment proceeding—namely, that property of the defendant can be found within the district, the court concludes that it lacks jurisdiction. *See, e.g.*, *Jaldhi*, 585 F.3d at 69 n.12 ("In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest."); *see also Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 51-52 (S.D.N.Y. 2009) ("The presence of some *res* in the district as a requisite for attaining jurisdiction over Rule B defendants comports with historic perceptions of maritime attachment procedures . . . ."); *Limonium Maritime, S.A. v. Mizushima Mariner, S.A.*, 961 F. Supp. 600, 606 (S.D.N.Y. 1997) ("The caselaw, the authorities, and basic logic demonstrate that no quasi in rem jurisdiction under Rule B can exist without some res to be attached. In fact, for the Rule B attachment to be appropriate, it is clear that the property must be located within the district and the property must belong to the defendant.") (internal quotations omitted); *Blueye Navigation, Inc. v. Oltenia Navigation, Inc.*, Nos. 94 Civ. 1500 (LAP), 94 Civ. 2653 (LAP), 1995 WL 66654, at *6 (S.D.N.Y. Feb. 17, 1995) ("Plaintiffs have failed to demonstrate that this court has jurisdiction over the defendants: no property of defendants has been located in the district to make Supplemental Rule B jurisdiction appropriate, and no other bases for jurisdiction have been alleged."). Accordingly, the court grants Defendants' motion to dismiss the

complaint and to vacate the Rule B attachment and also grants Hainan Airlines' motion to quash the Rule B attachment and to vacate the Rule E directions.

## IV.     CONCLUSION

Based on the foregoing, the court GRANTS Defendants' motion to dismiss the complaint and vacate the process of maritime Rule B attachment and garnishment (Dkt. # 45) and also GRANTS Garnishee Hainan Airlines' motion to quash maritime Rule B attachment and vacate the Rule E directions (Dkt. # 49). The court hereby DISMISSES Iron Pasha's action without prejudice and VACATES the Rule B attachment order and Rule E directions. Iron Pasha may replead within thirty days of the date of this order to allege traditional *in personam* jurisdiction over Defendants if appropriate or at such time as property of Defendants may be found within the district. If Iron Pasha fails to replead within thirty days, the court will enter judgment dismissing the action without prejudice.

Dated this 15th day of September, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 14